IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MARK LAWRENCE,

                Plaintiff,            OPINION AND ORDER

   v.

                                                  07-cv-515-bbc

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      This is an action for judicial review of an adverse decision of the Commissioner of Social Security brought pursuant to 42 U.S.C. § 405(g). Plaintiff Mark Lawrence, who suffers from low back pain, seeks reversal of the commissioner's decision that he is not disabled and therefore ineligible for Disability Insurance Benefits under Title II of the Social Security Act, codified at 42 U.S.C. §§ 416(i) and 423(d).

      Plaintiff contends that the administrative law judge relied on erroneous vocational testimony in making his step five determination. I find that any error the administrative law judge made in considering the vocational expert's testimony was harmless because substantial evidence supports the administrative law judge's conclusion that plaintiff was not

1

disabled according to Medical Vocational Rule 201.28.  Therefore, I am denying plaintiff's motion for summary judgment and affirming the administrative law judge's decision.

The following facts are drawn from the administrative record (AR):

FACTS

Plaintiff filed an application for disability insurance benefits on February 29, 2004, alleging that he had been unable to work since January 17, 2003 because of low back pain with radiculopathy.  AR 14.  Plaintiff was born on January 14, 1966 and has a twelfth grade education and past work experience as a truck driver.  AR 424-25.

After applying for benefits, plaintiff saw three state agency physicians in Arizona.  On June 30, 2004, Dr. Malcolm McPhee performed an examination of plaintiff at the request of the Arizona state agency.  After reviewing plaintiff's history and records and conducting an examination, Dr. McPhee found no objective reasons why plaintiff could not lift 50 pounds occasionally and 25 pounds frequently.  He also found that plaintiff could stand, walk and sit without restrictions; frequently climb and balance; and occasionally stoop, kneel, crouch or crawl.  AR 150-152.

On July 12, 2004, a state agency physician completed a physical residual functional capacity assessment for plaintiff, indicating that he could lift 50 pounds occasionally and 25 pounds frequently; sit, stand or walk six hours in an eight-hour workday; frequently climb

2

and balance; and occasionally stoop, kneel, crouch and crawl. AR 159-66. On October 8, 2004, a second state agency physician agreed with these findings except that he also limited plaintiff to no climbing of ladders, ropes and scaffolds and occasional climbing of ramps and stairs. AR 196-204.

Plaintiff also received medical treatment from numerous providers. Between January and April 2006, he saw Dr. Aiping Smith at the Marshfield Spine Clinic. On March 8, 2006, Dr. Smith indicated that plaintiff should be limited to sedentary work. AR 383. On March 24, 2006, Dr. Smith again noted that plaintiff was limited to sedentary work and limited him to seldom bending, squatting, twisting or pivoting. He assessed no limitations on reaching. AR 377. At the request of plaintiff's attorney, Kay Aiken, a physical therapist, evaluated plaintiff's physical capabilities on October 16, 2006. She concluded that plaintiff could stand or walk for two to four hours and sit for six hours in an eight-hour workday, lift seven pounds occasionally and 15 pounds maximum and not use his feet for repetitive movements in operating foot controls. She limited plaintiff to sedentary work with only occasional bending, squatting, kneeling, crawling, reaching and walking. Aiken wrote that plaintiff's "waist to overhead lifting mechanics [were] only fair." AR 395.

After the local disability agency denied plaintiff's application initially and upon reconsideration, plaintiff requested a hearing, which was held on November 7, 2006 before Administrative Law Judge Gregory Pokrass in Wausau, Wisconsin. AR 14. The

3

administrative law judge heard testimony from plaintiff, who was represented by a lawyer; plaintiff's wife; and William Dingess, a neutral vocational expert. AR 422. According to his résumé, Dingess has more than 20 years of experience as a rehabilitation counselor and vocational rehabilitation specialist. AR 54-6. Plaintiff agreed at the hearing that Dingess was qualified to offer expert vocational testimony. AR 449.

The administrative law judge asked Dingess to describe plaintiff's past work as a car salesman and a truck driver. Dingess testified that plaintiff had not worked long enough as a car salesman to adequately learn the job. The administrative law judge then stated that he would probably not consider that job past relevant work. Dingess testified that plaintiff's truck driver positions were semiskilled with a Specific Vocational Preparation (SVP) of four and at a medium to a very heavy exertional level. The administrative law judge asked Dingess whether this information was consistent with the Dictionary of Occupational Titles. Dingess responded yes. AR 450.

The administrative law judge asked Dingess whether an individual of plaintiff's age, education and work experience, who retained the residual functional capacity set forth in Exhibit 21F (between the sedentary and light exertional levels), could perform plaintiff's past work or any other jobs available in the economy. AR 451. With that residual functional capacity, such an individual could stand or walk two to four hours in a eight-hour workday; sit four to six hours in an eight-hour workday; lift seven pounds occasionally and 15 pounds

4

maximum; bend, squat, kneel, climb, reach and walk occasionally; and not use his feet for repetitive movements. AR 395. Dingess testified that such an individual could not perform plaintiff's past work as a truck driver but could perform other jobs in the economy, namely general office clerk (1,200), information clerk (2,000), bookkeeping clerk (1,400), industrial inspector (350) and sedentary cashier positions (10,000). AR 451.

On cross examination, plaintiff's attorney asked Dingess to provide the <u>Dictionary of Occupational Titles</u> code for the positions that he had named. Dingess identified more than one code for each position, admitting that some were listed as light work in the <u>Dictionary</u>. He stated that he had not done any survey or study in the state of Wisconsin to assess what number of jobs were sedentary versus light. However, he explained that he determined the number of jobs that plaintiff would be able to perform in reliance on information found in the <u>Occupational Employment Quarterly</u> concerning employment statistics within the Wisconsin economy, his past experience in working with individuals, doing extensive interviewing and his own observations of the types of jobs available. AR 453-56.

The administrative law judge left the record open for plaintiff to supplement it. On February 9, 2007, plaintiff's lawyer wrote to the administrative law judge, requesting the raw data that the vocational expert used to determine which jobs he cited were sedentary and which were light. (The letter is addressed to Administrative Law Judge O'Grady and does

5

not refer to William Dingess, but to a different vocational expert.)  AR 108-14. Administrative Law Judge Pokrass did not respond to this request.  On February 28, 2007, he issued a decision finding plaintiff not disabled.  AR 14-24.

In reaching his conclusion that plaintiff was not disabled, the administrative law judge performed the required five-step sequential analysis.  See 20 C.F.R. § 404.1520.  At step one, he found that plaintiff had not engaged in substantial gainful activity since January 17, 2003, the alleged onset date of his disability.  At step two, he found that plaintiff had a severe impairment of degenerative disc disease with status post microdiscectomy.  At step three he found that plaintiff did not have a physical impairment that met or medically equaled any impairment listed in 20 C.F.R. 404, Subpart P, Appendix 1.  AR 23.

At step four where he was to determine plaintiff's residual functional capacity, the administrative law judge reported that one state agency physician had determined that plaintiff was capable of medium exertional work and another stated that plaintiff could perform only sedentary work.  The administrative law judge stated that he "suspects the truth as to residual functional capacity lies somewhere between these two extremes" and that

> Claimant is a relatively young individual, such that the only way in which he could receive disability benefits would be if his condition met or equaled one of the list of the impairments in the Appendix or was sufficiently severe to preclude him from even a significant range of sedentary jobs (so long as there remains a significant number of sedentary jobs in the economy

6

>which the person such as claimant could perform, the Medical
>Vocational Guidelines would dictate a finding of not disabled).

AR 20.  In the end, the administrative law judge determined that plaintiff had the residual functional capacity to perform a full range of sedentary work and a partial range of light work with the following limitations:  no standing or walking of more than two to four hours in an eight-hour day; occasional bending, squatting, kneeling, climbing and reaching; and no repetitive use of the feet.  Id.

The administrative law judge noted that plaintiff had challenged the vocational expert's testimony at the hearing, arguing that the jobs that he cited were for the most part not sedentary and that his estimates of job availability were incorrect.  He concluded that these challenges were largely moot because plaintiff had the capacity for a full range of sedentary work and probably some degree of light work provided that there was no prolonged standing or walking, no repetitive use of the feet and only occasional bending, squatting, kneeling, climbing and reaching.  The administrative law judge also found that the estimated number of jobs available were well in excess of the minimum threshold for significant.  AR 20-1 (citing Lee v. Sullivan, 988 F.2d 789 (7th Cir. 1993) (as few as 675 jobs could be considered significant)).

The administrative law judge found that plaintiff was not able to perform his past work as a truck driver.  However, at step five, he relied on the testimony of the vocational

7

expert and determined that plaintiff could perform a significant number of jobs in the economy, namely cashier, office clerk, information clerk, booking clerk and inspector. He agreed that these jobs "straddle the border between sedentary and light, something which claimant's attorney has attempted to make an issue." AR 22. However, he found that because plaintiff could perform the full range of sedentary work, he was not disabled according to the Medical Vocational Guidelines (the Grids) Rule 201.28. AR 22.

This decision became the final decision of the commissioner on July 17, 2007, when the Appeals Council denied plaintiff's request for review. AR 5-7.

OPINION

Plaintiff asserts that the administrative law judge relied improperly on the flawed testimony of the vocational expert at step five to find that plaintiff could perform a significant number of jobs available in the national economy. Specifically, he contends that the administrative law judge failed to resolve the conflicts between the vocational expert's testimony and the Dictionary of Occupational Titles, did not question the methods used by the expert to calculate the number of available jobs in the economy and ignored plaintiff's request for the underlying data supporting the expert's testimony. In response, the commissioner argues at length that the administrative law judge properly assessed plaintiff's residual functional capacity and posed a correct hypothetical question. However, the

8

commissioner also asserts that the vocational expert's testimony was sufficiently detailed to permit the administrative law judge to rely on it and in the alternative, the adjudicator properly applied the Medical Vocational Guidelines at step five.

At step five, the burden is on the commissioner to show that despite the severe impairment, the claimant is able to perform other work "which exists in significant numbers either in the region where [the claimant] lives or in several regions of the country." Stevenson v. Chater, 105 F.3d 1151, 1154 (7th Cir. 1997); 42 U.S.C. § 423(d)(2)(A). The court must uphold the commissioner's finding regarding the existence of other work if the finding is supported by substantial evidence, that is, if reasonable minds would find the evidence adequate to support the conclusion. 42 U.S.C. § 405(g) (commissioner's findings of fact conclusive if supported by substantial evidence); Richardson v. Perales, 402 U.S. 389, 401 (1971).

To meet his burden, the commissioner can rely on Medical Vocational Guidelines (the grids). When a claimant's "vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(a). Additionally, "consultation with a vocational expert may be helpful or even required." Haynes v. Barnhart, 416 F.3d 621, 628 (7th Cir. 2005). For example, an administrative law judge is required to seek the services of a vocational expert where the claimant's non-

9

exertional limitations would substantially reduce the range of work that he is capable of performing. Luna v. Shalala, 22 F.3d 687, 691 (7th Cir. 1994); DeFrancesco v. Bowen, 867 F.2d 1040, 1045 (7th Cir. 1989); Social Security Ruling 96-9p; Social Security Ruling 83-10. Alternatively, an administrative law judge may rely on information contained in the Dictionary of Occupational Titles published by the Department of Labor. Social Security Ruling 00-4p. The Social Security Administration has taken "administrative notice" of the Dictionary, which contains detailed physical requirements for a variety of jobs. 20 C.F.R. § 404.1566(d)(1).

In this case, the administrative law judge found that plaintiff had the residual functional capacity to perform sedentary to light work with the following limitations: no standing or walking more than two to four hours in an eight-hour workday; occasional bending (or stooping), squatting (or crouching), kneeling, climbing and reaching; and no repetitive use of the feet. The administrative law judge found that because plaintiff was capable of a full range of sedentary work, he could "take administrative notice of non-disability by simply applying Vocational Rule 201.28." AR 22. However, because he found that plaintiff's exertional and nonexertional limitations precluded him from performing a full range of light work, he sought the testimony of Dingess, a vocational expert. Id.

Plaintiff does not challenge the administrative law judge's application of the grids in his supporting brief. Instead, he asserts that the administrative law judge relied on flawed

10

vocational expert testimony. For the reasons stated below, I agree that the expert testimony was flawed in some respects. However, to the extent that it was error for the administrative law judge to rely on this testimony, the error was harmless because the grids directed a finding of not disabled. I will address each of plaintiff's concerns separately.

A.  Consistency with Dictionary of Occupational Titles

The vocational expert acknowledged on cross examination that some of the different types of positions he had identified for plaintiff were listed as light work in the Dictionary of Occupational Titles. Plaintiff contends that the administrative law judge violated SSR 00-4p because he failed to obtain a reasonable explanation for the apparent conflict between the vocational expert's testimony and the Dictionary.

Plaintiff is correct that an administrative law judge who takes testimony from a vocational expert about the requirements of a particular job must determine whether that testimony is consistent with the Dictionary. Prochaska v. Barnhart, 454 F.3d 731, 735 (7th Cir. 2006). Social Security Ruling 00-4p states:

> When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will:

11

> Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and
>
> If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

SSR 00-4p. The ruling explains that because the Dictionary "lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings," a vocational expert may be able to provide more specific information about jobs than that provided by the Dictionary. Id. "Information about a particular job's requirement or about occupations not listed in the DOT may be available in other reliable publications, information obtained directly from employers, or from a [vocational expert's] experience in job placement or career counseling." Id. When there is a conflict between the vocational expert's testimony and the Dictionary, the administrative law judge is free to rely on the vocational expert's testimony so long as the administrative law judge determines that "the explanation given by the [vocational expert] is reasonable and provide[s] a basis for relying on [that] testimony rather than on the DOT information." Id.

Although the administrative law judge did not question Dingess directly on this matter, Dingess explained on cross examination that he had determined the types and number of jobs plaintiff would be able to perform on the basis of information found in the Occupational Employment Quarterly concerning employment statistics within the Wisconsin

12

economy, his past experience in working with individuals, doing extensive interviewing and his own observations of the types of jobs available. Further, plaintiff did not deny that with 20 years experience in the field, Dingess was qualified to offer expert vocational testimony. When Dingess's explanations are combined with his qualifications and experience, they provide a reasonable basis for the administrative law judge to rely on them over the Dictionary with regard to the requirements of the various jobs Dingess identified.

### B. Reliability of Method

Plaintiff attacks Dingess's testimony regarding the number of jobs available statewide because the administrative law judge failed to inquire into the reliability of his conclusions. As an initial matter, I disregard plaintiff's contention that the expert's testimony was required to pass the test for the admissibility of expert testimony set forth in Fed. R. Evid. 702, which substantially codifies the holdings of Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). As plaintiff admits, the Federal Rules of Evidence do not apply to disability adjudications, Donahue v. Barnhart, 279 F.3d 441, 446 (7th Cir. 2002), so his Daubert argument is misplaced. Nonetheless, because administrative decisions must be supported by substantial evidence, experts testifying at administrative hearings should use reliable methods in forming their opinions. Id. "Evidence is not 'substantial' if vital testimony has been conjured out of whole cloth." Id. "A vocational expert is 'free to give

13

a bottom line,' but the data and reasoning underlying that bottom line must be 'available on demand' if the claimant challenges the foundation of the vocational expert's opinions." McKinnie v. Barnhart, 368 F.3d 907, 911 (7th Cir. 2004) (quoting Donahue, 279 F.3d at 446). If the basis of the vocational expert's conclusions is questioned at the hearing, then the administrative law judge should undertake an inquiry into the reliability of the purported expert's conclusions. Id.

At the hearing, plaintiff questioned Dingess about the genesis of his job estimates. In response, the vocational expert stated that he relied on the Dictionary of Occupational Titles, his own experience working with individuals, extensive interviews of people with whom he worked, his observations of the type of jobs available and information from the Occupational Employment Quarterly. However, what Dingess failed to explain and the administrative law judge failed to clarify was the method he employed in determining how many jobs were sedentary versus light in a particular category. All Dingess cited were his experience and state job data, but neither of these explains his math. He did not cite any formal market surveys that he or other vocational experts had done or describe any informal method he employed to extrapolate his estimates from the state job data. His unsubstantiated and vague responses were insufficient to establish a foundation for his testimony. McKinnie, 368 F.3d at 911.

14

After the hearing, plaintiff's lawyer wrote a letter to request the raw data that the vocational expert used to calculate the number of jobs available. Although plaintiff's attorney erroneously addressed the letter to Administrative Law Judge O'Grady and referred to the wrong vocational expert, he identified plaintiff by name and social security number and referred to the correct hearing date. Plaintiff did not receive a response. Even if plaintiff were responsible for not obtaining the raw data, the administrative law judge erred in not inquiring into the reliability of the expert's conclusions. However, for the reasons stated below, I find that this error was harmless.

### C. Harmless Error

As previously discussed, the administrative law judge stated that he employed the resources of a vocational expert because he could not rely solely on Rule 202.21 (relating to light work). He noted that Rule 202.21 provided only a framework for his decision because plaintiff was not capable of performing the full range of light work. However, because he found that plaintiff's residual functional capacity fit squarely within Rule 210.28 (relating to sedentary work), he adopted the conclusion directed by that rule.

In reply to the commissioner's argument to this effect, plaintiff contends that the administrative law judge could not use Rule 210.28 as more than a framework because he had found that plaintiff had the nonexertional limitations of occasional bending (or

15

stooping), squatting (or crouching), kneeling, climbing and reaching and no repetitive use of the feet.  Luna, 22 F. 3d at 691 (administrative law judge must consult vocational expert where non-exertional limitation might substantially reduce range of work individual can perform).  Contrary to plaintiff's assertion, Social Security Ruling 96-9p states that postural limitations related to climbing, kneeling and crouching do not usually erode the occupational base for a full range of unskilled sedentary work.  The ruling also states that a restriction to occasional stooping only minimally erodes the unskilled, sedentary occupational base.  SSR 96-9p.  Because a job requiring the pushing or pulling of leg controls is considered light work, plaintiff's limitation in this area would not affect his ability to perform sedentary work.  20 C.F.R. § 404.1567(b).

Plaintiff's argument, however, has some merit with respect to reaching.  According to SSR 85-15, because most occupations require reaching (extending the hands and arms in any direction), significant limitations in this ability may eliminate a large number of jobs. However, nothing in the record shows that plaintiff was significantly limited in this ability. None of the three consulting physicians found that plaintiff had any reaching limitations. Moreover, plaintiff's own treating physicians did not indicate that he had severe reaching restrictions.  After treating plaintiff for three months, Dr. Smith did not note that plaintiff had reaching limitations in his March 2006 physical capabilities report.  In fact, the only provider to place any restrictions on plaintiff's ability to reach was Aiken, the physical

16

therapist who performed a one-time evaluation of plaintiff. Although she limited plaintiff to occasional reaching, she did not specify whether this was overhead reaching or any extension of his arms. From her comment that plaintiff's "waist to overhead lifting mechanics [were] only fair," it is reasonable to infer that she was more concerned with overhead reaching. Given the lack of evidence supporting a significant reaching limitation, it was reasonable for the administrative law judge to conclude that plaintiff was capable of performing the full range of sedentary work. For that reason, he was entitled to rely on Rule 210.28 in finding plaintiff not disabled.

ORDER

IT IS ORDERED that the decision of defendant Michael J. Astrue, Commissioner of Social Security, is AFFIRMED and plaintiff Mark Lawrence's appeal is DISMISSED. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 6th day of August, 2008.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge